680

31 C.C.P.A. (Patents)

ETTEN v. JANTZ (two cases).

Patent Appeals Nos. 4790, 4791.

Court of Customs and Patent Appeals.

Jan. 3, 1944.

Tefft & Tefft, of Chicago, Ill. (Charles K. Woodin, of Chicago, Ill. and J. Preston Swecker, of Washington, D. C., and Alexander C. Mabee and Charles F. Meroni, both of Chicago, Ill., of counsel), for appellant.

Charles E. Riordon, of Washington, D. C. (H. C. Lord, of Erie, Pa., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

These are appeals from decisions of the Board of Interference Examiners of the United States Patent Office, in interference proceedings, awarding to appellee in each case priority of invention of the subject matter of the counts.

In appeal 4790, interference 77,671, there is involved an application of appellee filed October 25, 1934, serial No. 749,977, and an application of appellant filed September 3, 1935, serial No. 38,932.

In appeal 4791, interference 77,672, there is involved the same application of appellee filed October 25, 1934, and a patent issued to appellant September 22, 1936, upon an application filed December 23, 1932, serial No. 648,620.

It will be observed that in appeal 4790 appellant is the junior party and the burden was upon him to establish priority of invention by a preponderance of evidence. In appeal 4791 appellant is the senior party, and the burden was upon appellee to establish priority of invention by a preponderance of evidence.

The general subject matter involved in both interferences is concisely described in appellant's brief as follows:

"The invention involved in these Interferences, as disclosed in the Etten patent and Jantz application, relates essentially to safety release mechanism for power-driven-roll wringers of washing machines.

"The wringing rolls are customarily pressed together under pressure, and being power driven, it not infrequently happens that an operator may get her hand caught in the bite of the rolls, causing serious injury thereto. The invention here involved has provision for quickly releasing the pressure of the rolls, under control of the operator, in the event of such an accident, to permit the hand to be withdrawn."

Both parties took testimony which, by stipulation, was made applicable to both of the interferences before us, and also to two other interferences between the same parties.

As both interferences are closely related they will be considered in a single opinion, but each interference will be separately considered.

Appeal No. 4790—Interference No. 77,671

In this appeal six counts are involved. Count 1 is illustrative and reads as follows: "1. In a wringer, in combination of a wringer roll supporting frame, wring-

er rolls mounted in said frame, one of said wringer rolls being slidably mounted, said frame comprising opposed frame members between which said wringer rolls are located, and a toggle between said frame members for producing pressure between said rolls, said toggle comprising a link provided with an inner pocket and pivoted to one of said frame members and an inner link pivoted to said pocketed link and to the other of said frame members in position to be received in said pocket upon approach to parallelism between said links for producing such pressure between said rolls."

The board found that with respect to all the counts appellee had conceived the invention and reduced it to practice "at least by April 10, 1932." Appellant alleged in his preliminary statement that he conceived the invention on or about May 2, 1932, and reduced it to practice on or about June 1, 1932. The date awarded to appellee of April 10, 1932, for conception and reduction to practice, being earlier than the dates of conception and reduction to practice alleged by appellant in his preliminary statement, priority of invention was awarded to appellee with respect to all of the counts.

Two questions are presented to us upon this appeal.

The first is a preliminary question concerning the admissibility of an amendment to appellee's preliminary statement. It appears that originally the Primary Examiner in his declaration of interference, dated November 8, 1939, required that the preliminary statements should be filed on or before December 11, 1939, and that on December 11 appellee filed a preliminary statement. This statement does not appear in the record, and the record furnishes no information as to the contents thereof. Appellant's brief, however, states that in such statement it was alleged that appellee conceived the invention on April 1, 1932, and reduced it to practice on September 1, 1932.

The record does show that on January 5, 1940, appellee filed a motion to substitute the preliminary statement appearing in the record for the preliminary statement filed December 11, 1939. In said motion it is stated that the preliminary statements were not due until January 11, 1940, because of a stipulation approved by the examiner extending the time to said last-named date. It was also stated in the motion that attached thereto was an affidavit setting forth the reasons why it was desired to substitute the preliminary statement, the subject of the motion. This affidavit does not appear in the record. Neither does the record show any objection by appellant to such motion. The motion was granted by the examiner on January 24, 1940. This substitute preliminary statement alleges conception of the invention on or about December 1, 1931, and reduction to practice on or about December 15, 1931.

Upon this point the board, in its decision, stated: "The Etten brief refers to the Jantz motion to amend his preliminary statement. The motion was granted without opposition and that question is not now up for consideration in this interference, although the Etten brief refers to Interference No. 75,433, wherein a motion by Jantz to amend his statement was before the interference examiner for determination at final hearing. It appears that this fact accounts for the argument concerning the amended statement in the instant case and no convincing reason has been presented for setting aside the ruling previously made relative to it."

In his reasons of appeal, appellant alleges error in the admission of the substitute preliminary statement.

■ It is obvious from the foregoing statement of facts that we cannot hold that said preliminary statement was improperly admitted. Even if the record showed that appellant had duly objected to its admission, there is nothing in the record upon which we could base a finding of error in its admission.

Coming now to the merits of the case, we would observe that if the board did not err in holding that appellee had reduced the invention to practice by April 10, 1932, it is unnecessary to consider the proofs of appellant with respect to his conception and reduction to practice of the invention, because the earliest date of conception alleged by him is subsequent to said date of April 10, 1932.

It appears from the evidence on behalf of appellee that in May 1931 he made an agreement with the Corcoran Manufacturing Company of Norwood, Ohio, for the manufacture of washing machine wringers designed and patented by him; that under the terms of the agreement appellee was to receive a royalty on all such wringers produced and sold by said company, and also a commission on the sales of wringers;

that appellee was to be in charge of such sales for the company; and that prior to such agreement the Corcoran Company had never manufactured washing machine wringers.

Appellee testified that pursuant to such agreement the Corcoran Company manufactured wringers pursuant to his instructions and sold a large number of the same; that such wringers were criticized with respect to the safety release mechanism thereon; that he then proceeded with the work of improving the type of wringers so manufactured, and that the invention here involved was developed through eight successive stages; that a wringer was constructed (appellee's Exhibit O), embodying the final stage, and tested sometime in the latter part of March or first of April 1932; that in such tests the wringer was attached to a power-driven washing machine, and wet clothing was passed through the wringer "in the regular way, as anybody would use a wringer"; that the release mechanism, was operated and that it "worked perfectly."

Appellee further testified that the wringer, Exhibit O, embodying the involved invention was laid aside and was not put into commercial production until the summer of 1933; that the reason for this was that the Corcoran Company was in financial difficulties and was placed in receivership, and the receiver continued the business with the old models and was unwilling, until July 1933, to expend the money necessary for dies, etc., to manufacture the model embodying the invention; that in the latter part of July 1933 the receiver arranged to have the necessary dies made, and many wringers were produced and sold similar to Exhibit O. A sample of such ringers was introduced in evidence as "Jantz Exhibit T."

It was stipulated that on September 28, 1932, one Frank J. Norris was appointed receiver for the Corcoran Company, with authority to continue the business; that the receivership was terminated by the sale of the assets of the Corcoran Company on June 27, 1934, and the company was dissolved as a corporation as of December 27, 1934.

Appellee did not introduce any documentary evidence touching his activities relative to the involved invention, made during the time of its alleged development by him. He did introduce certain drawings made shortly before the testimony in his behalf was taken, but such drawings only served to explain his testimony and that of his corroborating witnesses, and in themselves have no probative force.

Appellee explained the absence of any documentary evidence relating to the development of his invention as follows: "I thought that possibly I might pick up some records or memorandums down at the old Corcoran Manufacturing Company's plant, but I found that everything had been entirely cleaned out and done away with and the factory was being occupied by another concern, and I didn't know where to go to get any records, because we really kept hardly any records as we went along. We would make memorandums of this or that thing and think of it, and that would be the end of it,—it would pass away some way."

With respect to the preservation of the physical exhibits introduced in evidence by appellee, he testified that when it was decided that the Corcoran Company would go out of business, he put such exhibits in one corner of the factory floor and put a card upon them bearing the statement "property of G. H. Jantz," and later removed them to the factory of the Boss Washing Machine Company where they remained until the time his testimony was taken.

Appellee introduced the testimony of three witnesses to corroborate his testimony with respect to his conception of the invention and its reduction to practice.

Without going into detail respecting such testimony, it is sufficient to say that if the events testified to by them occurred at the times testified to, reduction to practice of the invention by appellee not later than April 10, 1932, is sufficiently established.

Appellant sharply challenges the testimony of these corroborating witnesses and invokes the well-established rule that where only oral testimony is relied upon, taken long after the events testified to, it must be carefully scrutinized.

Having in mind this rule, we have scrutinized the testimony of said corroborating witnesses very carefully. It does not appear that said witnesses had any connection with, or relationship to, appellee when their testimony was taken. At the time of the alleged development of appellee's invention, they were all employees of the Corcoran Company. They were tool and die makers, and each testified that he took part in the construction of the wringers in the various stages of the development of

the involved invention, including its final form, Exhibit O. We are of the opinion that they sufficiently identified the various elements of the invention as called for by the counts. Each of said witnesses testified to the testing of Exhibit O by running wet clothes through it and operating the release mechanism, and that such mechanism operated satisfactorily.

It should here be stated that the testimony shows that one change was made in Exhibit O after its alleged reduction to practice, but such change did not involve any of the elements of the counts. This change will be hereinafter referred to in connection with the discussion of another question.

We find nothing in the record impugning the credibility of said corroborating witnesses. If they had depended solely upon memory for the dates fixed by them, inasmuch as they testified eight years after the occurrence of the events testified to by them, we might well question their credibility, for it is contrary to human experience that one can, with certainty, remember dates so long after the event unless connected with the happening of some other event, the date of which can be definitely fixed.

The witness Brueggeman testified to the completion and testing of Exhibit O in the latter part of February 1932, and that it was then laid aside; that on May 17, 1932, his wife became seriously ill and was taken to a hospital where she remained for some time, and that while she was there he, being in charge of such work for the Corcoran Company, directed that a duplicate of Exhibit O be made by the workmen so that if said Exhibit O was taken by Mr. Jantz from the factory as a model for selling purposes, a duplicate would remain in the factory for experimental purposes. It was stipulated that the records of the Good Samaritan Hospital at Norwood, Ohio, show that the wife of the witness entered the hospital on May 17, 1932, and left the hospital on June 4, 1932.

Appellee's witness Dasbach testified that he personally made some of the parts of Exhibit O; that while engaged in that work he accidentally injured a fellow workman to such extent as to require the services of a doctor, one Frank Perry, and that Exhibit O was completed and tested in March. It was stipulated that the office records of Dr. Perry show that the injured workman was brought to him for treatment on February 2, 1932.

Appellee's third corroborating witness was one Herman Onck, a die maker. He testified to the completion of a wringer embodying the invention and its successful testing in the latter part of March or first of April 1932; that he knew Exhibit O was completed and tested before April 10, 1932, because on that date his wife came to the factory and informed him that a blooded cat which she owned was having kittens; that at that time Exhibit O was attached to a washing machine and he demonstrated its operation to his wife, after which he accompanied her to her home to assist in taking care of the cat; that the kittens were registered at a "Cattery"; that all but one died; and that the survivor became a champion cat and was one of the winners at the Dayton, Ohio, cat show.

Mrs. Onck corroborated her husband's testimony with respect to the cat episode, and the demonstration to her of the operation of Exhibit O.

The owner of the "Cattery" also testified to the registration by her of the birth of the kittens on April 10, 1932, and also corroborated the testimony of Mr. and Mrs. Onck that one of the kittens so registered later became a prize cat. A copy of the registration of said kittens by the "Cattery," showing the birth of said kittens on on April 10, 1932, was introduced in evidence by appellee.

The aforesaid occurrence of events, the dates of which were established and relied upon by witnesses to aid their recollection of the events respecting reduction to practice of the involved invention, lead us to the conclusion reached by the board that reduction to practice by appellee of the involved invention was accomplished before any date to which appellant is entitled for either conception or reduction to practice.

Appellee's conduct respecting the invention, as revealed by his testimony, gives rise to some doubt that he considered that he had made an invention. The record shows that he was an experienced inventor. Two patents relating to wringers issued to him, one in 1922 and the other in 1931, are in the record. He testified that one attorney had looked after "all of my patent applications for a number of years";

684

that he was familiar with the rules of the Patent Office, and if he considered an improvement made by him was important enough, he would proceed to apply for a patent for it. However, his instant application was not filed until October 25, 1934, more than two and a half years after his claimed completion of the invention.

Another circumstance is that appellee must have been aware of the desirability, from a patent standpoint, of preparing and preserving drawings of the invention. One of the employees of the Corcoran Company, and a witness for appellee (Onck), although primarily a die maker, was also a draughtsman, but he never made any drawings of the invention, nor was he requested by appellee to do so.

While under a different state of facts the above-named circumstances might warrant a holding that the alleged invention was merely an abandoned experiment, the testimony of disinterested witnesses in the case at bar, if it is to be believed, positively shows reduction to practice of the invention prior to April 10, 1932, and the beginning of commercial production of the invention a little more than a year thereafter. Inasmuch as we find nothing in the record upon which to base lack of credibility of said witnesses, we cannot find error in the holding of the board respecting reduction to practice of the invention by appellee.

Appellant contends that if it should be held that appellee was the first to conceive and reduce to practice the invention, the doctrine of concealment and suppression is here applicable, and that appellee is estopped from claiming priority of the invention. He cites in support of this contention the leading case of Mason v. Hepburn, 13 App.D.C. 86, and several cases in this court.

We find no basis in the record for the application of said doctrine. It appears that appellee was ready and desired to put the device embodying the invention upon the market shortly after its completion, and that the reason why it was not done was the financial condition of the Corcoran Company and its unwillingness to expend the money necessary for the production of new dies for its manufacture.

It further appears that on June 17, 1932, the Corcoran Company received a notice of infringement from the Lovell Manufacturing Company of certain designated patents owned by it. This notice obviously applied to wringers then being sold by the Corcoran Company under its contract with appellee which did not embody the involved invention.

Appellee testified that to avoid infringement of one of said patents which involved a key hole slot in a certain relation, he discontinued the key hole slot and made a round hole in lieu thereof, and that such change was made in Exhibit O. That this change was made in June 1932, shortly after said notice of infringement was received, was corroborated by two of appellee's witnesses.

The notice of infringement above referred to was introduced in evidence by appellee.

The circumstance last above related supports appellee's contention that said Exhibit O was not laid aside after its testing in April 1932, either as an abandoned experiment or with intent to conceal and suppress the invention. Obviously the change in said Exhibit O above referred to was made in the expectation of commercially producing and putting upon the market the invention, which was afterwards done.

For the reasons herein stated, the decision appealed from will be affirmed.

Appeal No. 4791—Interference No. 77,672

In this interference, as noted earlier in this opinion, appellant is the senior party and the single count before us was copied from his patent. Appellee's application is the same as is involved in appeal 4790. The count reads as follows: "In a roll wringer releasing device, the combination of a lower wringer frame, a releasable top frame therefor, wringer rolls disposed in the lower frame, tensioning means for the rolls supported in the upper frame, the same being capable of moving the upper frame relative to the lower frame to relax pressure between the rolls, a toggle link mechanism connecting the upper and lower frames the same being operable by the upper frame when the latter is moved by said tensioning means, latch mechanism cooperative with said link mechanism adapted to prevent operation of the latter by the described movement of the upper frame whereby said movement is prevented and pressure between the rolls is maintained and manual means for moving said latch to permit operation of the toggle link mechanism to allow movement of the upper frame whereby pressure between the rolls is relaxed."

The questions before us upon this appeal are identical with those in appeal 4790, and the record is substantially the same in both cases.

With respect to the admissibility of appellee's substitute preliminary statement there is nothing in the record upon which error could be based in its admission, and our discussion of a similar question in appeal 4790 is applicable here.

With regard to reduction to practice, the same dates are set forth in the respective preliminary statements as were set forth in appeal 4790. The board found that appellee had reduced the invention to practice not later than April 10, 1932, and that being earlier than any date to which appellant was entitled under his preliminary statement, priority of invention was awarded to appellee.

The board stated that its reasons for so holding were more fully stated in interference 77,671 (appeal 4790).

So, here the evidence being the same as in appeal 4790 our reasons given in that appeal for affirming the decision of the board are applicable here, and the decision appealed from must be affirmed.

For the reasons herein stated, the decisions of the board in appeals 4790 and 4791 are affirmed.

Affirmed.